Plaintiff was a guest passenger in the car of Victor Silvio early on the morning of October 17, 1947, and sustained certain physical injuries for which he seeks to recover damages from the defendant railroad company when he was thrown from the automobile as it made a sharp turn to the left in the street in an attempt to avoid a collision with one of the trains of the railroad company.
It was the custom of Silvio to pick up the plaintiff at the postoffice building in Baton Rouge each morning and they drove together to work. On that morning, as usual, they were traveling in a westward direction on Florida Street, and in approaching the railroad crossing at the 1400 block in that street, Silvio, apprehending the danger of running into a train which was about to make the crossing, swerved his car to his left and in doing so it would seem that the right hand front door, next to which the plaintiff was seated, opened in some manner and plaintiff fell on the sidewalk, or at a gate through which the car ran, at the place of business of one Charles S. Stewart, situated on the north side of Florida Street and approximately 35 feet west from the railroad crossing. The Stewart's office is situated in the rear of the office of the Amite Sand and Gravel Company and is reached by a driveway through the gate that was knocked down by Silvio as he went through. It is not disputed that his car, after knocking the gate down, struck a building on the lot, and proceeded on a distance of about 40 or 50 feet and only came to a rest when it struck a truck which was parked on the lot.
This suit is brought against the railroad company on the alleged negligence of the crew in charge of the train that was making the crossing at the moment, in failing to give a warning or signal of any kind, by blowing of the whistle or ringing of the bell and in addition that it permitted the flasher signal at the crossing to be and remain out of order on the morning of the accident. This flasher signal, also referred to as a wig-wag, consists of two red lights arranged horizontally on a cross bar attached to a post, which operate alternately from the moment the train makes contact with an open circuit some 365 feet south of the crossing and continue flashing as a warning, until the train has completed making the crossing over the street.
The defense on the part of the railroad company is that all proper signals as to blowing of the whistle and ringing of the bell were given, in accordance with the regulations and such laws as exists with regard to those matters, and that the flasher signal was properly working on that morning. It is affirmatively averred in the *Page 98 
answer, that the injuries sustained by the plaintiff in the accident were caused solely and exclusively by the negligence of Silvio, driver and owner of the car, in failing to keep a proper lookout or to pay heed to the warnings and signals that were given and also in driving his car with defective brakes. All negligence charged against the railroad company is denied and in the alternative it is alleged that plaintiff himself was guilty of contributory negligence as he had every opportunity to observe the situation as well as did Silvio, the driver of the car, and yet he uttered no protest at the manner in which he approached the crossing and besides he also knew of the defective condition of the brakes on the automobile.
The demand is for $6,764.50 including physical injury and physical and mental pain and suffering, as well as doctor's, hospital and other medical expenses.
The trial judge after hearing the case, rendered a written opinion in which he held that the defendant railroad company was not guilty of any negligence whatever and dismissed plaintiff's suit. From a judgment so decreeing, this appeal was taken.
The trial judge has carefully analyzed the facts in the case in the opinion he wrote and properly held that the charges of negligence relating to the failure of giving signals by blowing of the whistle and ringing of the bell had not been supported by the evidence adduced by plaintiff. On this point he held that the positive testimony of the members of the crew in charge of the train that the usual whistle signal was given and that the automatic bell signal was ringing, over-came the more or less negative testimony of the plaintiff and of Silvio and also of a Negro witness by the name of Moses Haynes, who was following them in an automobile by some 50 or 75 feet. The one factor which seemed to give the trial judge concern was whether or not the flasher light signal was operating that morning for, apparently he seemed to have been of the opinion that if it was not, the railroad company might have been guilty of negligence in that respect. After reviewing the testimony of the three witnesses for the plaintiff, as well as that of the engineer and fireman who were riding in the cab of the engine, he reached the conclusion that it was operating and that is why he acquitted the railroad company of all negligence, and consequently, of any blame or liability for the accident.
The evidence discloses that this train which consisted of a Deisel motor engine and two passenger coaches leaves the station of the Louisiana and Arkansas Railroad Company in Baton Rouge each morning at about 6:20 o'clock. It is used as a shuttle train to take employees to work at the Standard Oil plant north of Baton Rouge. It is not disputed that in running through the congested area of the city, after leaving the station, it does not run faster than five or six miles per hour as it was doing on the morning in question. On that morning, like every morning, it stopped at North Boulevard which is two blocks south of Florida Street to take on more passengers, then crossing over Florida Street and stopped again at Main street, two blocks north of Florida Street for the same purpose. It is hardly probable therefore that it traveled any faster than what the evidence in this case reveals. The crew in charge of the train all testified that the bell, which was operated by opening an air valve, started to ring right after leaving the station and that the valve was left open and the bell kept ringing all the time until the train had passed out of the northern end of the congested area of the city. They all testified also that the crossing whistle signal which consists of two long blasts, one short and another long, was given, and the importance of this is shown by what would happen to a man like the engineer in charge of this particular train who, if he failed to give that signal, would stand the loss of 30 years or more seniority and would not have a job any longer.
The testimony of the engineer and fireman, as well as that of the man in charge of keeping the flasher working, shows that in addition to the red lights which flash in front of the driver of an automobile approaching from either the east or west, *Page 99 
it is so constructed that the same bulb which flashes red, also flashes a white light visible to the engineer or the fireman in the cab of the engine and in that manner they know that the system is operating. The testimony of these men is that they observed this white light that morning and that is why they are certain that the system was operating as it should. The defendant, in addition, produced the testimony of the man who keeps the signal in order and judging by his testimony it seems to be almost fool-proof and gets out of order so infrequently that he could not recall but very few occasions over a long period of time and then when the trouble was reported, it was immediately corrected. As we understand his testimony when trouble does occur the difficulty is not so much in trying to make the system flash its lights as to keep them from flashing constantly because it seems that when trouble occurs the contact stays on and the lights keep flashing all the time.
Now let us refer to the testimony that is offered on behalf of the plaintiff on these three important points. Silvio testified that he did not hear any bells and no whistle and he also says that there were no lights, meaning we suppose, the lights in the flasher signal. Plaintiff's testimony is simply that he heard no bells and he heard no whistle. He says that the signal lights were not flashing, as did Silvio also, and that there was nobody there to flag the crossing. The witness Haynes says that he saw no signal light and that he did not hear any whistle or bell and neither did he see a flagman at the crossing. Looking at their testimony as to the bell and whistle signal as being purely negative, that is that they did not hear a bell or a whistle, and comparing it to the testimony of the witnesses for the defendant and the circumstances on which they rely to prove that the bell was ringing and the whistle blowing, we cannot but agree with the trial judge that this latter testimony must prevail over that offered by the plaintiff. As a matter of fact the point concerning these two warnings is not stressed very much at this time by counsel for plaintiff.
With regard to whether or not the flasher signal was operating, we see no reason why more weight and importance should be given to the testimony of the plaintiff and Silvio, the owner of the car, than to that of the operators of this train as well as that of the man in charge of the signal. As we look upon it, from the standpoint of interest, it strikes us as though the testimony of the plaintiff and of Silvio, who himself is plaintiff in another suit arising out of this same accident, could be said to be as personal and as biased as is that of the employees of the railroad company and that then would leave us only with the testimony of the witness, Moses Haynes, which the trial judge apparently discounted and which, in the face of that, we do not see why we should accept as the deciding testimony on this important point. This party was following the Silvio car at a considerable distance and when he saw what was happening in front of him as the Silvio car made this sharp turn to the left, he no doubt became excited and we seriously doubt that he observed as closely as he said he did, that the system was not working at that time.
That leaves us then with the testimony of two other witnesses with regard to the operation of the wig-wag light system; two ladies who say they also observed, not on the morning of the accident but on the following morning, as they crossed the track, that the lights were not burning. Their testimony of course relates to some other time than the one at which this accident occurred and was adduced in an effort to show that the system does get out of order at times when a train approaches the crossing. Reading the testimony of these two ladies very closely, we doubt whether, when they made their observation, the contact necessary to put these lights in operation had been made. Neither of them was very definite with regard to the place at which they saw the train or the engine on the track as they crossed over and whether it may not have been that the train or engine was not on the point of contact on the rail where the signal actually operates. We certainly cannot, *Page 100 
on the testimony of these two ladies alone, and especially in view of all the other testimony on this point, conclude that the signal was not operating on the morning of the accident.
Entertaining these views it would seem unnecessary to go any further than to say that the judgment should be affirmed on the ground that the plaintiff has failed to show any negligence against the defendant railroad company but we think it is proper to refer to certain circumstances mentioned by the trial judge which greatly affect the testimony of the driver of the car, Silvio. After crashing into this gate and damaging a building next to it, he volunteered a statement to Stewart, on whose property this happened, that his brakes "went out on him" and mentioned nothing whatever about the flasher light system not operating. He made the same statement to the police officers also who came to the scene of the accident just after it happened. One of the officers, Mr. Clyde Parent, testified that he told both him and Mr. Lockwood, another officer, "that his brakes had failed and to avoid an accident he had to make a left turn into this gate to keep from having an accident with other people". Again he did not mention a thing to them about the flash lights not operating. It would seem most natural that if the failure of the light signal to operate was in any manner the cause of his having to make this left hand turn in an emergency, that he would almost spontaneously have mentioned that fact as well as the one about his brakes, to all of these men. In addition to that it is shown that he paid Mr. Stewart for the repair to his building and he himself repaired the gate.
This also he certainly would not have done had he thought the railroad company was in the least bit to blame for the damage which he now maintains he had been forced to cause by reason of its negligence as is now alleged by him.
In as much as we conclude, as did the trial judge, that no negligence has been shown against the operators of the railroad train and that the sole cause of the accident was the negligence of the driver of the Silvio car, it is unnecessary to discuss the question of imputation of the latter's negligence to the plaintiff.
For the reasons stated, it is ordered that the judgment appealed from be, and the same is hereby affirmed at the costs of the plaintiff, appellant herein.